[Cite as *State v. Kiriakou*, 2014-Ohio-4056.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2014CA00048 |
| DIANA KIRIAKOU | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Canton Municipal
                             Court, Case No. 2014TRC0245


JUDGMENT:                    Reversed and Remanded


DATE OF JUDGMENT ENTRY:      September 15, 2014


APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

TASHA FORCHIONE                 EUGENE CAZANTZES
Canton Prosecutor's Office      Chase Tower
218 Cleveland Ave. S.W.         101 Central Plaza South
Canton, OH  44701               Suite 1000
                                Canton, OH  44702

*Gwin, P.J.*

{¶1}   Appellant, Diana Kiriakou ["Kiriakou"] appeals the March 5, 2014 judgment of the Canton Municipal Court, Stark County, Ohio overruling her motion to suppress.

*Facts and Procedural History*

{¶2}   On January 11, 2014, Kiriakou was stopped and charged for two counts of operating a vehicle while under the influence of alcohol in violation R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d), both misdemeanors of the first degree. Kiriakou was additionally charged with one count of prohibition against parking on a highway, in violation of R.C. 4511.66, a minor misdemeanor offense.

{¶3}   On February 19, 2014, Kiriakou filed a motion to suppress arguing that the Trooper did not have a reasonable and articulable suspicion to justify a traffic stop. An evidentiary hearing was held on March 5, 2014. The following facts were presented during the hearing on Kiriakou's motion to suppress.

{¶4}   On January 11, 2014 at 1:29 a.m., Kiriakou was driving southbound on Whipple Avenue, near the Westfield shopping mall. The area contained multiple businesses. Ohio State Highway Patrol Trooper Duane Shephard was driving in the right lane while Kiriakou was in the left lane. Both vehicles stopped at a red light controlling traffic into a strip mall before the shopping mall and the I-77 on ramp.

{¶5}   Trooper Shephard testified that he paused for a moment then continued through the intersection. Trooper Shephard estimated that Kiriakou was stopped at the light for seven seconds. The video revealed she remained stopped for approximately eleven seconds after the traffic signal turned green.

{¶6} According to Trooper Shephard, Kiriakou's started to move her vehicle before he started his second U-turn. Shortly thereafter, he pulled behind her vehicle and initiated a traffic stop. Trooper Shephard observed there were two other females in Kiriakou's car.

{¶7} Kiriakou's explained to Trooper Shephard that her delay at the traffic signal might have been because she was talking with her passengers. According to Trooper Shephard, he detected an odor of alcohol from Kiriakou. In response to questioning, Kiriakou informed the trooper that she had had one martini and one glass of wine with dinner. Upon further questioning, Kiriakou stated that her second drink, the wine, was approximately twenty minutes ago.

{¶8} Trooper Shephard testified that Kiriakou did not slur her speech. She was polite and compliant. She was steady and did not sway. She complied with field sobriety testing on the side of the road.

{¶9} Based on Trooper Shephard's observations, Kiriakou was arrested and transported to the post for a chemical test. Kiriakou provided a breath sample, which resulted in a concentration of 0.111.

{¶10} The trial court verbally overruled Kiriakou's motion to suppress immediately following testimony. The court stated findings of fact and conclusions of law on the record, finding that the trooper had "probable cause under 4511.66 (A)" for the stop and that there was an underlying violation of the statute and under the totality of the circumstances including the odor of alcohol and the results of the field sobriety test.

{¶11} On the same date, Kiriakou entered a plea of no contest. The trial court found her guilty and imposed a sentence of three days in the driver's intervention

program, twenty-five hours of community service, a fine of three hundred and seventy-five dollars ($375.00) and a driver's license suspension.

*Assignment of Error*

**{¶12}** Kiriakou raises one assignment of error,

**{¶13}** "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

*Analysis*

**{¶14}** Kiriakou argues that Trooper Shephard did not have reasonable suspicion to justify a traffic stop because her actions were not a violation of R.C. 4511.66.

**{¶15}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); *See, generally, United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002);

*Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

{¶16} In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89(1996), the United States Supreme Court held:

> The temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective.

*Whren* at 1771. Less than one month later, the Ohio Supreme Court reached a similar decision in *City of Dayton v. Erickson*, 76 Ohio St.3d 3,1996-Ohio-431,665 N.E.2d 1091. In *Erickson*, the Court stated:

> Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.

Id. at syllabus.

**{¶17}** The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4358, 894 N.E.2d 1204, ¶ 23. Further, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *City of Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091(1996).

**{¶18}** Trooper Shephard testified that the basis for the stop in the case at bar was his belief that Kiriakou violated R.C. 4511.66 which provides in part,

(A) Upon any highway outside a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. In every event, a clear and unobstructed portion of the highway opposite such standing vehicle shall be left for the free passage of other vehicles, and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.

This section does not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle in such position.

In the case at bar, the evidence establishes that Kiriakou was lawfully stopped at an intersection controlled by a signal device. R.C. 4511.13, Signal indications, provides, in part,

(C) Steady red signal indication:

(1)(a) Vehicular traffic, streetcars, and trackless trolleys facing a steady circular red signal indication, unless entering the intersection to make another movement permitted by another signal indication, shall stop at a clearly marked stop line; but if there is no stop line, traffic shall stop before entering the crosswalk on the near side of the intersection; or if there is no crosswalk, then before entering the intersection; and shall remain stopped until a signal indication to proceed is displayed except as provided in divisions (C)(1), (2), and (3) of this section.

{¶19} Thus, Kiriakou was not "stopped" upon the highway within the contemplation of R.C. 4511.66; rather she was "stopped" in accordance with R.C. 4511.13(C)(1)(a). Additionally, the evidence presented at the hearing on Kiriakou's motion to suppress established that before the trooper had begun his second U-turn, Kiriakou's car had proceeded into the intersection. Thus, the trooper could not have believed that Kiriakou's car has been "parked" upon the highway within the contemplation of R.C. 4511.66.

{¶20} Some delay after a signal device turns green is not indicative of criminal behavior. A driver may not rely solely upon the fact that the light has turned green to proceed into an intersection. *Money v. Cincinnati Street Ry. Co.*, 86 Ohio App. 61, 67-68,89 N.E.2d 683(1st Dist. 1949)("plaintiff, relying solely upon the fact that the traffic

light was green, proceeded into the intersection, knowing that there might be a streetcar or other southbound traffic on Broadway lawfully in the intersection, with preferential right to complete the crossing (Section 6307-13, General Code), without having his automobile under sufficient control to avoid colliding with such traffic, should there be any such traffic in the intersection" was negligent). Rather, an automobile having a preferential right of way still has a duty to use ordinary care to avoid injury to others who are lawfully in the intersection at the time the light turned green. R.C. 4511.13(A)(1)(a)(i) and R.C. 4511.13(A)(1)(a)(ii); *Beers v. Zettelmayer,* 155 Ohio St. 520, 524, 99 N.E.2d 655(1951); *Tresenrider v. Riss & Co.*, 120 Ohio App. 81, 84, 201 N.E.2d 82(10th Dist. 1963). Further, it is preferential that drivers engage in distracting behaviors such as communicating with or checking electronic devices, tuning the radio, adjusting a GPS navigation system or reading a map while the vehicle is at a stop. *See*, R.C. 4511.204, texting while driving prohibited; R.C. 4511.205, using electronic wireless communications device while driving.

{¶21} This is not a case in which the officer observed additional circumstances upon which the officer based his decision to stop the vehicle. For example, in *State v. Cox* this Court reviewed a stop wherein the evidence established,

> Trooper Criswell testified he first observed appellant's vehicle parked in the area of the public square with the brake and back-up lights illuminated *for approximately ten minutes*. T. at 6. The trooper next observed the vehicle on North Jefferson Street, *stopped in the center of the roadway. Id.* Trooper Criswell circled around to get behind the vehicle; *as he turned on the roadway, he observed the vehicle still stopped,*

*unmoving at the stop sign. Id.* After Trooper Criswell stopped his cruiser behind appellant's vehicle, *the vehicle slowly moved through the intersection. Id.* Trooper Criswell then initiated the stop. *Id.* A video recording of the stop, State's Exhibit 1, was presented as an exhibit, and illustrated that for the entire block as Trooper Criswell was approaching appellant's vehicle, the vehicle was at the stop sign with its brake lights on. *Id.* at 8. (Emphasis added).

5th Dist. Knox No. 10-CA-0016, 2011-Ohio-1316, ¶15; ¶21. We are unwilling to engage in a determination of how many seconds of delay -- two, five, seven, ten, twelve -- will justify a conclusion that R.C. 4511.66 has been violated. In the case at bar, the trooper did not cite any other factors that would have resulted in reasonable and articulable suspicion for a traffic stop.

{¶22} Accordingly, since Kiriakou did not facially violate R.C. 4511.66, this could not provide Trooper Shephard with an articulable and reasonable suspicion that Kiriakou was operating her motor vehicle in violation of the law. Under the circumstances presented in this case, police would be justified in stopping a motor vehicle upon nothing more than a few seconds delay at a traffic signal. We do not believe this to have been intended in R.C. 4511.66. The actions that Trooper Shephard had witnessed did not provide a basis to reasonably believe that Kiriakou had "stopped" or "parked" her vehicle upon the highway as contemplated by R.C. 4511.66.

{¶23} Kiriakou's sole assignment of error is sustained.

{¶24} The judgment of the Canton Municipal Court, Stark County, Ohio is reversed and this case is remanded for further proceedings consistent with this opinion.

By Gwin P.J.,

Farmer, J., and

Delaney, J., concur